1

2

THE HONORABLE MARSHA J. PECHMAN

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9   MISTI LEON, as personal representative of the
    ESTATE OF JULIANA LEON, a deceased
10  individual,

            Plaintiff,
11
        v.
12

13  EXXON MOBIL CORPORATION;
    EXXONMOBIL OIL CORPORATION; BP
14  P.L.C.; BP AMERICA INC.; OLYMPIC PIPE
    LINE COMPANY LLC; CHEVRON
15  CORPORATION; CHEVRON U.S.A., INC.;
    SHELL PLC; SHELL USA, INC.;
16  CONOCOPHILLIPS; CONOCOPHILLIPS
    COMPANY; PHILLIPS 66; and PHILLIPS 66
17  COMPANY,

18          Defendants.

No.  2:25-cv-1190

**PLAINTIFF'S MOTION TO**
**REMAND AND FOR JUST COSTS**

Noted for Sept. 9, 2025

19

20

21

22

23

24

PLAINTIFF'S MOTION TO REMAND
No. 2:25-cv-1190

Bechtold Law Firm, PLLC
PO Box 7051, Missoula, MT 59807
(406) 721-1435

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND ................................................................................. 2

    A.   State Court Action and Claims ................................................... 2

    B.   Defendants' Notice of Removal .................................................. 4

III.   LEGAL STANDARD........................................................................... 4

IV.    ARGUMENT....................................................................................... 6

    A.   Diversity jurisdiction does not exist because Defendants failed to meet their burden to prove that Olympic was fraudulently joined.......................................................................... 6

        1.   Plaintiff has sufficiently stated a claim against Olympic for failure to warn, public nuisance, and wrongful death. ............................................... 6

        2.   None of Plaintiff's claims require a showing that Olympic or any other Defendant engaged in marketing directed at the public. ................................................ 10

        3.   Defendants cite no Washington precedent establishing that Plaintiff is unable to prevail or that such failure is obvious from well-settled law. ............................... 12

    B.   The Ninth Circuit does not recognize procedural misjoinder, and remand would still be required here even if the doctrine did apply.......................................................... 13

    C.   The Court should award Plaintiff just costs and fees. ................................................. 15

V.     CONCLUSION................................................................................... 188

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Arco GC, LLC v. KCL Excavating, Inc.*,
No. C23-1720JLR, 2024 WL 124673 (W.D. Wash. Jan. 11, 2024) ........................................ 15

4

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
25 F.4th 1238 (10th Cir. 2022) .............................................................................................. 17

5

*Chesapeake & Ohio Ry. Co. v. Cockrell*,
232 U.S. 146 (1914) .................................................................................................................. 5

6

*City & County of Honolulu v. Sunoco* LP,
39 F.4th 1101 (9th Cir. 2022) ........................................................................................... 1, 16

7

8

*City of Hoboken v. Chevron Corp.*,
45 F.4th 699 (3d. Cir. 2022) ................................................................................................... 17

9

*City of Oakland v. BP* PLC,
969 F.3d 895 (9th Cir. 2020) ............................................................................................. 1, 16

10

*City of Oakland v. BP PLC*,
No. C 17-06011, 2022 WL 14151421 (N.D. Cal. Oct. 24, 2022) ............................................ 17

11

12

*Connecticut v. Exxon Mobil Corp.*,
83 F.4th 122 (2d Cir. 2023) .................................................................................................... 17

13

*County of Multnomah v. Exxon Mobil Corp.*,
No. 3:23-cv-01213-YY, 2024 WL 1991554 (D. Or. Apr. 10, 2024) ................................. 10, 11

14

*County of Multnomah v. Exxon Mobil Corp.*,
No. 3:23-cv-01213-YY, 2024 WL 2938473 (D. Or. June 10, 2024) ............................... passim

15

16

*County of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022) ............................................................................................. 1, 16

17

*DeWoody v. Progressive Direct Insurance Co.*,
No. 2:23-cv-01416-RAJ, 2024 WL 639228 (W.D. Wash. Feb. 15, 2024) ............................. 13

18

19

*District of Columbia v. Exxon Mobil Corp.*,
89 F.4th 144 (D.C. Cir. 2023) ................................................................................................ 17

20

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005) .................................................................................................................. 4

21

22

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992). ................................................................................................... 4

23

24

PLAINTIFF'S MOTION TO REMAND
No. 2:25-cv-1190

ii

*Grancare, LLC v. Thrower by and through Mills,*
   889 F.3d 543 (9th Cir. 2018) ................................................................ passim

*Hamilton Materials, Inc. v. Dow Chem. Corp.,*
   494 F.3d 1203 (9th Cir. 2007) ....................................................................... 5

*Hunter v. Philip Morris USA,*
   582 F.3d 1039 (9th Cir. 2009) ................................................................ 5, 13

*Lincoln Prop. Co. v. Roche,*
   546 U.S. 81 (2005) .......................................................................................... 4

*Makah Indian Tribe v. Exxon Mobil Corp.,* No. 2:24-cv-157 & *Shoalwater Bay Indian Tribe v. Exxon Mobil Corp.,* No. 2:24-cv-158, 2025 WL 913767 (W.D. Wash. Mar. 26, 2025) .......... 16

*Martin v. Franklin Capital Corp.,*
   546 U.S. 132 (2005) ..................................................................................... 15

*Mayor & City Council of Baltimore v. BP p.l.c.,*
   31 F.4th 178 (4th Cir. 2022) ....................................................................... 17

*McCabe v. Gen. Foods Corp.,*
   811 F.2d 1336 (9th Cir. 1987) ....................................................................... 5

*Miller v. U.S. Auto. Ass'n,*
   No. 2:23-CV-0294-TOR, 2023 WL 8772852 (E.D. Wash. Dec. 19, 2023) ............ 5

*Minnesota v. Am. Petroleum Inst.,*
   63 F.4th 703 (8th Cir. 2023) ....................................................................... 17

*Perry v. Luu,*
   No. 1:13-cv-00729-AWI-JLT, 2013 WL 3354446 (E.D. Cal. July 3, 2013) ............ 14

*Peterson v. Kennewick,*
   No. 2:18-cv-1302-BJR, 2018 WL 6573155 (W.D. Wash. Dec. 13, 2018) ............ 14, 15

*Rhode Island v. Shell Oil Production Co.,*
   35 F.4th 44 (1st Cir. 2022) ......................................................................... 17

*Sztroin v. Dituri,*
   No. C22-5608 BHS, 2022 WL 7053149 (W.D. Wash. Oct. 12, 2022) ................ 15

*Tapscott v. MS Dealer Serv. Corp.,*
   77 F.3d 1353 (11th Cir. 1996) ................................................................ 13, 15

*Thee Sombrero, Inc. v. Murphy,*
   No. 5:15-cv-01004-VAP-SP, 2015 WL 4399631 (C.D. Cal. July 17, 2015) ............ 14

*Wailes v Allstate Insurance Co.*,
  No. 2:23-cv-01651-TL, 2023 WL 8188785 (W.D. Wash. Nov. 27, 2023) ............................. 13

*Weeping Hollow Ave. Trust v. Spencer*,
  831 F.3d 1110 (9th Cir. 2016) .................................................................................. 5

*Williams v. Homeland Insurance Company of New York*,
  18 F.4th 806 (5th Cir. 2021) ................................................................................. 14

*Wise v. Long*,
  668 F. Supp. 3d 1145 (W.D. Wash. 2023) ................................................................. 13

**Statutes**

28 U.S.C. § 1331 ...................................................................................................... 4

28 U.S.C. § 1332 ...................................................................................................... 4

28 U.S.C. § 1441(b)(2) ............................................................................................. 4

28 U.S.C. § 1447(c) ......................................................................................... 2, 5, 15

Fed. R. Civ. Pro. 12(b)(1) ........................................................................................ 7

Rev. Code Wash. 4.20 ........................................................................................ 2, 10

Rev. Code Wash. 7.48 .......................................................................................... 2, 8

Rev. Code Wash. 7.72 .......................................................................................... 2, 7

**Other Authorities**

Olympic Pipe Line Company, *Olympic Pipe Line Company Pipeline Specifications Manual*
  (Sept. 10, 2024) ................................................................................................. 12

1    **I.    INTRODUCTION**

2    Plaintiff Misti Leon, personal representative of the Estate of her mother Juliana ("Julie")

3    Leon, moves to remand this case back to the Superior Court of Washington for King County where

4    it was properly filed. Julie died of hyperthermia during the 2021 Pacific Northwest Heat Dome—

5    an unprecedented heat wave that scientists determined would have been "virtually impossible"

6    without anthropogenic climate change. Dkt. # 1-1, at 5, ¶ 1.8. Defendants are companies engaged

7    in the production, distribution, promotion, and/or sale of fossil fuel products. Plaintiff alleges that

8    Defendants acted individually and in concert with one another in violating their duty to warn about

9    the dangers of using their products, concealing and misrepresenting their knowledge of these

10    dangers from the public, and promoting the unabated sale and use of their products. This conduct,

11    Plaintiff alleges, violated the Washington Product Liability Act, created a public nuisance, and

12    caused Julie Leon's death.

13    Many of the Defendants named in this suit, including the Chevron entities that filed this

14    Notice of Removal, Dkt. # 1, have repeatedly tried and failed to remove similar state law cases to

15    federal courts across the country. In this Circuit alone, Defendants have failed to secure federal

16    court jurisdiction in thirteen climate accountability lawsuits, with three separate Ninth Circuit

17    decisions affirming remand.[1] As a result of courts consistently rejecting arguments asserting

18    federal question jurisdiction, Defendants have turned to attacks on the inclusion of in-state parties.

19    Defendants now remove on the theory that diversity jurisdiction exists because Olympic Pipe Line

20    Company, LLC ("Olympic"), a BP subsidiary and fossil fuel distributor headquartered in Renton,

21

22    _____

23    [1] *City & County of Honolulu v. Sunoco* LP, 39 F.4th 1101, 1106 (9th Cir. 2022), *cert. denied*, 143
       S. Ct. 1795 (2022); *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 744 (9th Cir. 2022),
24    *cert. denied*, 143 S. Ct. 1797 (2022); *City of Oakland v. BP* PLC, 969 F.3d 895, 901 (9th Cir.
       2020), *cert. denied*, 141 S. Ct. 2776 (2021).

PLAINTIFF'S MOTION TO REMAND                                          Bechtold Law Firm, PLLC
No. 2:25-cv-1190                              1                        PO Box 7051, Missoula, MT 59807
                                                                      (406) 721-1435

Washington, was fraudulently joined or procedurally misjoined. Judge Nelson resoundingly rejected these arguments against a different in-state defendant in *County of Multnomah v. Exxon Mobil Corp.*, No. 3:23-cv-01213-YY, 2024 WL 2938473 (D. Or. June 10, 2024) (*"Multnomah"*). This Court should follow suit and strike down Defendants' baseless arguments once again.

Plaintiff has sufficiently stated claims for wrongful death, failure to warn, and public nuisance against all Defendants, including Olympic. Defendants' contention that Olympic was fraudulently joined fails because they have not met their heavy burden of proving by clear and convincing evidence that Plaintiff's success is obviously impossible under well-settled rules of Washington law. Defendants' invocation of procedural misjoinder is misguided because the Ninth Circuit does not recognize the doctrine, and is further inapt in any event because Defendant has failed to establish that application of the doctrine would lead to a finding of misjoinder here. Consequently, complete diversity of citizenship does not exist, and the case must be remanded to state court. Plaintiff respectfully requests that this Court award just costs and fees pursuant to 28 U.S.C. § 1447(c) because Defendants do not have an objectively reasonable basis for asserting federal jurisdiction and are merely using removal as a tool of delay, as they have in so many prior climate accountability cases.

## II.    BACKGROUND

### A.    State Court Action and Claims

On May 29, 2025, Plaintiff, as personal representative of Julie Leon's estate, Dkt. # 1-1, at 7, ¶ 2.1, filed a complaint for damages against Defendants in the Superior Court of Washington for King County. Plaintiff asserts causes of action under Washington law, including claims for wrongful death (RCW 4.20), failure to warn (RCW 7.72), and public nuisance (RCW 7.48). On June 28, 2021, Julie died of hyperthermia during the unprecedented Pacific Northwest Heat Dome, Dkt. # 1-1, at 18, 20–21, ¶¶ 4.1, 4.7–4.15, an event that climate change made more likely, more

intense, and more deadly, *id.* at 22–23, ¶¶ 4.24–4.26. Anthropogenic climate change is directly linked to the dramatic rise in the consumption of fossil fuels since the 1950s. *Id.* at 22, ¶ 4.20.

Members of the fossil fuel industry, including Defendants and their corporate predecessors and affiliates, have known since as early as the 1950s that the regular and intended use of their fossil fuel products was altering the Earth's atmosphere. Dkt. # 1-1, at 4, ¶ 1.2. By 1968, Defendants understood the fossil fuel-dependent economy they were creating and perpetuating would intensify those atmospheric changes, resulting in more frequent and destructive weather disasters and foreseeable loss of human life. *Id.* Instead of warning consumers or the public about the dangers associated with their fossil fuel products, or otherwise acting to mitigate the dangers posed by their products, Defendants concealed and misrepresented their knowledge of these dangers, and deceived the public about the urgency, likelihood, and risks associated with global climate change and its causal connection to the products they produce, distribute, and sell. *Id.* at 4–6, ¶¶ 1.3–1.12. Defendants' deceptive conduct and failure to warn has persisted for decades and continues to this day. *Id.* at 6, ¶ 1.12. Their production, promotion, distribution, and sale of fossil fuels without warning, misrepresentations, and other deceptive conduct have sustained and inflated demand for fossil fuel products and delayed the transition to cleaner energy alternatives. *Id.*

Through their failure to warn, marketing, distribution, extraction, refinement, transport, and sale of fossil fuels, Defendants each bear responsibility for the spike in atmospheric $CO_2$ levels that is causing climate change and thus the occurrence and severity of the otherwise virtually impossible heat dome that killed Julie Leon. Dkt. # 1-1, at 4–5, 23, ¶¶ 1.3–1.8, 4.27–4.28. Defendants' conduct violated the Washington Product Liability Act's prohibition on failing to warn the public about the known dangers of their products, *id.* at 74–75, ¶¶ 5.6–5.18, created a

1  public nuisance from which Julie suffered severe and special injury, *id.* at 76–78, ¶¶ 5.19–5.28,

2  and caused Julie's death—giving rise to a claim for wrongful death, *id.* at 74, ¶¶ 5.1–5.5.

3        Plaintiff seeks economic and noneconomic damages arising from Decedent Julie Leon's

4  injuries, pain and suffering, and loss of life, as well as punitive damages and equitable relief to

5  address Defendants' decades of deception, misinformation, and failure to warn. *Id.* at 79–80,

6  ¶¶ 6.1–7.8.

7        **B.    Defendants' Notice of Removal**

8        On June 25, 2025, Defendants Chevron Corporation and Chevron USA, Inc. filed a Notice

9  of Removal in this Court, asserting that this Court has diversity jurisdiction under 28 U.S.C.

10  § 1332. Dkt. # 1, at 9, ¶ 13. Defendants allege that Olympic, whose Washington citizenship

11  destroys complete diversity, was fraudulently joined and procedurally misjoined. *Id.* Defendants

12  do not raise, and therefore waive, the argument that this Court has federal question jurisdiction

13  under 28 U.S.C. § 1331.

14  **III.    LEGAL STANDARD**

15        Federal courts have limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545

16  U.S. 546, 552 (2005). If a plaintiff initiates a civil action in state court, a defendant may remove

17  that action to federal court only if the plaintiff could have originally filed the action in federal

18  court. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). "When federal-court jurisdiction is

19  predicated on the parties' diversity of citizenship, . . . removal is permissible only if none of the

20  parties in interest properly joined and served as defendants is a citizen of the State in which the

21  action was brought." *Id.* at 83–84 (cleaned up); 28 U.S.C. § 1441(b)(2). Federal courts apply a

22  "strong presumption" against removal, and any doubts about removability must be resolved in

23  favor of remanding the case to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

24

To prevail on a claim that diversity jurisdiction would exist but for the fraudulent joinder of an in-state defendant, removing defendants must prove either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548, 551 (9th Cir. 2018) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)); *see also Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).[2] The Ninth Circuit recognizes a "general presumption against fraudulent joinder" and defendants removing an action to federal court bear a "heavy burden" of proving that joinder of the in-state party was improper. *Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)).

To prove that a party was fraudulently joined by failure to establish a cause of action, Defendants must prove by clear and convincing evidence that the in-state party "cannot be liable on *any* theory." *Grancare,* 889 F.3d at 548, 549 (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)) (emphasis added). The failure of the complaint to state such a claim must be "obvious according to the settled rules of the state." *Id.* "[A]ll contested issues of fact and any ambiguities of state law [must be resolved] in the plaintiff's favor." *Miller v. U.S. Auto. Ass'n*, No. 2:23-CV-0294-TOR, 2023 WL 8772852 at *2 (E.D. Wash. Dec. 19, 2023) (quotation marks omitted). Where there is even "a *possibility* that a state court would find that the complaint states a cause of action" against the in-state defendant, the court "must find that the joinder was proper and remand the case to the state court." *See Grancare*, 889 F.3d at 548 (quotation marks omitted); 28 U.S.C. § 1447(c).

---

[2] Defendants here do not allege any actual fraud in the pleading of jurisdictional facts and therefore concede that is not at issue.

Bechtold Law Firm, PLLC
PO Box 7051, Missoula, MT 59807
(406) 721-1435

## IV.    ARGUMENT

Defendants' attempt to manufacture diversity jurisdiction in the case fails. They have neither provided clear and convincing evidence that Olympic has been fraudulently joined nor met their hefty burden to prove that Plaintiff cannot prevail on any of her claims under well settled rules of Washington law. Defendants' reliance on procedural misjoinder fares no better because the Ninth Circuit does not recognize the doctrine and remand would still be required even if the doctrine applied. Olympic is a proper defendant in this matter, its Washington citizenship cannot be disregarded, and the case must be remanded.

### A.    Diversity jurisdiction does not exist because Defendants failed to meet their burden to prove that Olympic was fraudulently joined.

Defendants have not provided evidence, much less clear and convincing evidence, that Olympic has been fraudulently joined. Plaintiff has leveled detailed allegations against all Defendants, including Olympic, and has sufficiently pleaded all elements of each claim asserted. Defendants bear a heavy burden in proving that Plaintiff is unable to prevail on any of her claims under well settled rules of Washington law, yet Defendants have not cited a single Washington law, rule, or principle that would prevent her from successfully litigating her claims. Instead, Defendants seek to impose additional elements that Washington law does not require for the claims asserted. Olympic was not fraudulently joined; Olympic's Washington citizenship cannot be disregarded. Defendants have thereby failed to establish there is complete diversity among the parties and remand is required.

### 1.    Plaintiff has sufficiently stated a claim against Olympic for failure to warn, public nuisance, and wrongful death.

Remand is proper where, as here, Defendants fail to show by clear and convincing evidence that the non-diverse Defendant cannot be held liable for *any* of the claims alleged in the Complaint. This is a stringent analysis akin to the "wholly insubstantial and frivolous" standard

1  for dismissing claims under Federal Rule of Civil Procedure 12(b)(1). *Grancare*, 889 F.3d at 548.

2  Plaintiff in this case adequately alleges claims for failure to warn, public nuisance, and wrongful

3  death against Olympic. Dkt. # 1-1, at 74–78, ¶¶ 5.1–5.28. Defendants' arguments to the contrary

4  fail to bear the heavy burden required.

5         The Complaint alleges that Defendants, including Olympic, are "manufacturers *and/or*

6  *sellers other than manufacturers* of dangerous fossil fuel products." *Id.* at 75, ¶ 5.10 (emphasis

7  added). Under the Washington Product Liability Act, a "product seller other than a manufacturer,"

8  a term that includes wholesalers, distributors, and retailers, is liable for harm caused by its

9  negligence, including negligent failure to warn, and for misrepresentations and intentional

10  concealment of information about the product. RCW 7.72.040(1) (a) and (c); Dkt. # 1-1, at 75, ¶

11  5.9. Olympic owns the Olympic Pipeline through which it distributes oil within Washington and

12  Oregon, Dkt. # 1-1, at 10, ¶ 2.4(f), and thus constitutes a product seller other than a manufacturer

13  under the Act; *see also id.* at 75–76, ¶¶ 5.9, 5.16. The Complaint alleges that "those Defendants

14  acting primarily as wholesalers, distributors, and/or retailers of fossil fuel products at all relevant

15  times knew those products would cause catastrophic harm." *Id.* at 75–76, ¶¶ 5.10–5.16; *see, e.g.*,

16  *id.* at 23–24, 26–37, ¶¶ 4.29–4.33, 4.36–4.40, 4.45–4.46, 4.49–4.50. The Complaint further alleges

17  that, despite this knowledge, Olympic and other Defendants "negligently failed to warn of those

18  harms, and misrepresented and/or intentionally concealed material facts about unabated use of

19  those products." *Id.* at 75–76, ¶¶ 5.12–5.16; *see, e.g.*, *id.* at 37–58, 60–63 68, 70, 72–73, ¶¶ 4.52,

20  4.56–4.67, 4.69, 4.72–4.74, 4.77–4.85, 4.89–4.93, 4.97, 4.100, 4.103–4.104, 4.107–4.108. Finally,

21  the Complaint alleges that Olympic and other Defendants' failure to warn proximately caused

22  Julie Leon's injuries and death. *Id.* at 76, ¶¶ 5.17–5.18; *see generally id.* at 73, ¶¶ 4.109–4.112.

23

24

Next, under Washington law, "[n]uisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission . . . injures or endangers the comfort, repose, health or safety of others . . . or unlawfully interferes with, obstructs, or tends to obstruct or render dangerous for passage . . . any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property." RCW 7.48.120; Dkt. # 1-1, at 76, ¶ 5.20. "[W]hatever is injurious to health or indecent or offensive to the senses . . . so as to essentially interfere with the comfortable enjoyment of the life and property" is an actionable nuisance subject to damages and other relief. RCW 7.48.010; Dkt. # 1-1, at 76–77, ¶ 5.21. A private person may maintain a civil action for public nuisance where "it is specially injurious to himself or herself." RCW 7.48.210; Dkt. # 1-1, at 77, ¶ 5.22. Plaintiff has alleged that Defendants, including Olympic, "individually and in concert with each other, have engaged, and continue to engage in, unlawful, reckless, knowing, and/or intentional tortious conduct." Dkt. # 1-1, at 77, ¶ 5.23. The Complaint includes a non-exhaustive list of examples of Defendants' conduct, such as "promoting and creating the sale and use of fossil fuels without warning consumers that using fossil fuels would cause dangerous climate change" and "promoting and creating the sale and use of fossil fuels that Defendants knew to be hazardous." *Id.* at 77–78, ¶ 5.23(b)–(c), 5.24–5.25. Plaintiff elaborates on these examples throughout the Complaint. *See, e.g.*, *id.* at 23–58, 60–64, 68–70, 72–73, ¶¶ 4.29–4.33, 4.36–4.40, 4.45–4.46, 4.49–4.50, 4.52, 4.56–4.67, 4.69, 4.72–4.74, 4.77–4.85, 4.89–4.93, 4.97, 4.100, 4.103–4.104, 4.107–4.108. As the Complaint alleges, the tortious conduct of all Defendants, including Olympic, "has caused harms to public health and property, as well as to Julie's health, safety, and security in life." *Id.* at 78, ¶ 5.24. As a direct and proximate result of Defendants' conduct in creating a public nuisance, Julie suffered severe harm, including injuries;

1    intense physical pain and suffering, anxiety, emotional distress, and/or humiliation; and death. *Id.*

2    at 78, ¶¶ 5.24–5.28; *see also id.* at 73, ¶¶ 4.109–4.112.

3        Washington law also provides that a wrongful death claim is available "[w]hen the death

4    of a person is caused by the wrongful act, neglect, or default of another person," RCW. 4.20.010,

5    and that all causes of action that the deceased may have at the time of death survive to the

6    decedent's personal representatives. RCW 4.20.046. The Complaint alleges that all Defendants,

7    including Olympic, engaged in the wrongful action described above, and that such action

8    proximately caused Juliana Leon's death. Dkt. # 1-1, at 74, ¶¶ 5.1–5.5; *see also id.* at 18–23, 73,

9    ¶¶ 4.1–4.28, 4.109–4.112.

10        Despite Defendants' claims that the complaint is devoid of specific allegations against

11    Olympic – as the Complaint makes clear – every reference to "BP" throughout the Complaint

12    collectively refers to all BP entities, including BP p.l.c., BP America, Inc., and Olympic. *Id.* at 11,

13    ¶ 2.4(h). Additionally, Olympic was in its own capacity a member of the Western States Petroleum

14    Association (WSPA) during a period in which WSPA's knowledge of climate harms was well-

15    established. *Id.* at 11, 24, ¶¶ 2.4(g), 4.31. The Complaint further alleges that BP—Olympic's

16    parent company, which controls its day-to-day operations, *id.* at 10, ¶¶ 2.4(e)–(f)—and its

17    predecessor companies have played and continue to play an active role in the leadership and

18    operations of WSPA, *id.* at 10–11, ¶ 2.4(g), and the American Petroleum Institute (API), *id.* at

19    10–11, 29, ¶¶ 2.4(g), 4.46(b). The BP Defendants were also actively involved in the founding and

20    leadership of the Global Climate Coalition, *id.* at 40–41, 43–45, ¶¶ 4.60, 4.65, and other front

21    groups and industry associations, *see, e.g., id.* at 39, ¶¶ 4.57, 4.59.

22        Finally, the Complaint makes a number of allegations against *all* named Defendants,

23    including Olympic. That "allegations are in the form of general allegations against all defendants

24

PLAINTIFF'S MOTION TO REMAND                                          Bechtold Law Firm, PLLC
No. 2:25-cv-1190                        9                    PO Box 7051, Missoula, MT 59807
                                                                         (406) 721-1435

does not diminish the fact that the general allegations apply with equal force" to *each* defendant. *Multnomah*, 2024 WL 2938473 at *5. To the extent that Defendants take issue with group pleading, such "arguments go to the sufficiency of the complaint . . . they do not establish fraudulent joinder." *Grancare*, 889 F.3d at 552; *County of Multnomah v. Exxon Mobil Corp.*, No. 3:23-cv-01213-YY, 2024 WL 1991554 at *6 (D. Or. Apr. 10, 2024) (magistrate judge's recommendation) ("*Multnomah Magistrate Judge's Recommendation*") ("[T]o the extent defendants seem to assert that Space Age was fraudulently joined because plaintiff's complaint alleges misconduct against all defendants collectively, [] the Ninth Circuit in *GranCare* rejected such an argument as a basis for establishing fraudulent joinder.") (internal citation omitted).

Plaintiff's allegations sufficiently establish "the possibility that a state court would find that the complaint states a cause of action against" Olympic for failure to warn, public nuisance, and wrongful death. *See Grancare*, 889 F.3d at 548. Consequently, there is no fraudulent joinder here.

> **2.    None of Plaintiff's claims require a showing that Olympic or any other Defendant engaged in marketing directed at the public.**

Defendants seek to impose on Plaintiff the burden of proving elements that Washington law does not require for the claims asserted. As the elements of each claim listed in Section IV.A.1 *supra* make clear, none of the claims at issue requires that Plaintiff plead misrepresentation, let alone affirmative statements amounting to misrepresentation. The Court in *Multnomah* refused to allow Defendants to rewrite Oregon law to require proof of misrepresentation for claims that do not require such a showing. 2024 WL 2938473 at *3–5 (finding that even if claims "necessarily and solely 'hinge on Defendants' culpable conduct in deceptively promoting and concealing the dangers of fossil fuel use,' the analysis on fraudulent joinder would not change"). This Court

should similarly decline Defendants' invitation to impose pleading requirements on Plaintiff that Washington law itself does not.

Consequently, Defendants' assertion that "Olympic Pipe Line merely transports fossil fuels"—if true—does not serve as a defense to the claims asserted, which allege *inter alia* that Olympic knew that those fossil fuel products would cause catastrophic harm, yet negligently failed to warn of those harms, Dkt. # 1-1, at 75–76, ¶¶ 5.9–5.16, and that through its operations, Olympic promoted and created the sale and use of fossil fuel products that Olympic knew to be dangerous, *id*. at 77, ¶¶ 5.23; *see also, e.g.*, *id.* at 16–17, 23–37, 63, 72–73, ¶¶ 3.4, 3.6, 3.9–3.10, 4.28–4.33, 4.36–4.40, 4.45–4.46, 4.49–4.50, 4.95–4.96, 4.107–4.108. A finding that Olympic merely distributed fossil fuel products it knew to be dangerous without warning and that Olympic did not engage in active marketing campaigns does not absolve Olympic of liability under the causes of action alleged.

To the extent Plaintiff's claims rely at all on affirmative misrepresentations directed at the public, Plaintiff has alleged that all Defendants, including Olympic, have individually and collectively engaged in a number of such acts. *See, e.g.*, *id*. at 37–47, 53–58, 60–64, 68–70, 72–73, 76–78, ¶¶ 4.52, 4.56–4.67, 4.69, 4.72–4.74, 4.77–4.85, 4.89–4.93, 4.97, 4.100, 4.103–4.104, 4.107–4.108, 5.16–5.17, 5.23–5.25.

Defendants' denial that Olympic engaged in any marketing activities or made affirmative misrepresentations to the public does not prove these facts. *See Grancare*, 889 F.3d at 551 ("[A] denial, even a sworn denial, of allegations does not prove their falsity."). Such statements "at bottom do nothing more than deny plaintiff's allegations." *Multnomah*, 2024 WL 2938473 at *5 (quoting *Multnomah Magistrate Judge's Recommendation*, 2024 WL 1991554 at *11). At most, such assertions establish that Olympic's role in marketing fossil fuels to consumers is a contested

1    issue of fact subject to discovery and fit for a jury determination. Such factual disputes are not

2    suited for resolution on a motion to dismiss, let alone at the removal stage before this Court's

3    jurisdiction has been established.

4         It is also worth emphasizing that Defendants' characterization of Olympic's activities—

5    stating that "[i]t merely owns the Olympic Pipeline, which transports refined products between

6    Blaine, Washington, and Portland, Oregon," Dkt. # 1, at 10, ¶ 20—is misleading, based solely on

7    the document Defendants themselves cite to support their claim. Dkt. # 1, at 10 n.5, ¶ 20 n.5. The

8    Manual Defendants cite states that Olympic receives petroleum products from four refineries

9    across Northwest Washington: "BP Cherry Point, CONOCOPHILLIPS Ferndale, TESORO

10   Anacortes, and SHELL Puget Sound Plant, located at Blaine, Ferndale and Anacortes,

11   respectively." Olympic Pipe Line Company, *Olympic Pipe Line Company Pipeline Specifications*

12   *Manual* 2-2 (Sept. 10, 2024)(attached here as Exhibit 1). "Each delivers into the pipeline various

13   grades of gasoline, jet fuel and diesel products for distribution to consumers in Washington and

14   Oregon, principally." *Id.* Olympic undertakes quality assurance monitoring and due diligence

15   intended to ensure that the products it distributes meet various standards and regulatory

16   requirements, including Olympic's own standards. *Id.* "The pipeline services terminals located in

17   Renton, Seattle, Sea-Tac, Tacoma, Vancouver, Linnton and Portland." *Id.* at 6-23. Plaintiff does

18   not concede that the statements made in the *Olympic Pipe Line Company Pipeline Specifications*

19   *Manual* are true, but instead cites them to highlight Defendants' disingenuous characterization of

20   Olympic's operations.

21              **3.    Defendants cite no Washington precedent establishing that Plaintiff is
                        unable to prevail or that such failure is obvious from well-settled law.**

22

23         Defendants do not cite any Washington precedent to support their assertion that Plaintiff

24   cannot succeed on her claims—a far cry from providing clear and convincing evidence that

PLAINTIFF'S MOTION TO REMAND                          Bechtold Law Firm, PLLC
No. 2:25-cv-1190                    12                 PO Box 7051, Missoula, MT 59807
                                                             (406) 721-1435

Plaintiff's inability to succeed on these claims is obvious under the settled rules of Washington State. In *Wise v. Long* (the *only* precedent from this Court that Defendants cite), the Court found that the plaintiff's claim would undoubtedly fail, as "under settled Washington law," claims against insurance adjusters for bad faith and consumer protection violations fail to state a claim as a matter of law. 668 F. Supp. 3d 1145, 1150 (W.D. Wash. 2023). Here, Defendants point to neither any established rule that would render Plaintiff's success impossible, nor any Washington case law even suggesting that Plaintiff may not succeed on the claims alleged. Moreover, this case is easily distinguishable from *Wise* because Plaintiff is seeking relief from Olympic. *See Wailes v Allstate Insurance Co.*, No. 2:23-cv-01651-TL, 2023 WL 8188785 at *1 (W.D. Wash. Nov. 27, 2023) (distinguishing that case, where plaintiff sought relief against in-state defendant individually, from *Wise*, where plaintiff "repeatedly said that she is not seeking any relief" against in-state defendants).

Defendants have identified no well-settled rule or precedent indicating that Plaintiff's cause of action against Olympic is futile under Washington law, and in the absence of such a showing, this Court must find that the joinder was proper and remand the case to the state court. *See DeWoody v. Progressive Direct Insurance Co.*, No. 2:23-cv-01416-RAJ, 2024 WL 639228 at *3 (W.D. Wash. Feb. 15, 2024); *Grancare*, 889 F.3d at 549 (citing *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)).

**B.    The Ninth Circuit does not recognize procedural misjoinder, and remand would still be required here even if the doctrine did apply.**

As an alternative ground to justify removal, Defendants ask this Court to deviate from Circuit and District precedent in adopting the doctrine of procedural misjoinder. The doctrine of procedural misjoinder, sometimes referred to as egregious or fraudulent misjoinder, suggests that a federal court can ignore the citizenship of nondiverse parties upon removal where "egregious

Bechtold Law Firm, PLLC
PO Box 7051, Missoula, MT 59807
(406) 721-1435

misjoinder" has occurred. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Off. Depot, Inc.,* 204 F.3d 1069, 1072–73 (11th Cir. 2000). The Ninth Circuit does not recognize the doctrine of procedural or fraudulent misjoinder. *Peterson v. Kennewick*, No. 2:18-cv-1302-BJR, 2018 WL 6573155 at *8 (W.D. Wash. Dec. 13, 2018) (collecting cases); *Multnomah*, 2024 WL 2938473 at *7 ("Both sides recognize that the Ninth Circuit has not endorsed the use of procedural misjoinder as a tool for evaluating whether a party should be disregarded for determining diversity jurisdiction."). In fact, the fraudulent misjoinder doctrine has only been adopted by the Eleventh Circuit—the Circuit in which it originated. *Williams v. Homeland Insurance Company of New York*, 18 F.4th 806, 814–15 (5th Cir. 2021).

"Not only is the overwhelming weight of authority against the use of 'procedural misjoinder' in analyzing diversity jurisdiction, the reasoning underpinning those decisions is compelling—that there is a critical problem in relying on procedural misjoinder to evaluate a question of subject matter jurisdiction." *Multnomah*, 2024 WL 2938473 at *7. Adoption of this doctrine "contradicts the narrow construction properly given to removal statutes" and the "general presumption against fraudulent joinder." *Peterson*, 2018 WL 6573155 at *9. Moreover, as a practical matter, the doctrine "makes little sense" and invites the court to engage in circular reasoning. *Thee Sombrero, Inc. v. Murphy*, No. 5:15-cv-01004-VAP-SP, 2015 WL 4399631 at *4 (C.D. Cal. July 17, 2015); *see also, e.g., Perry v. Luu*, No. 1:13-cv-00729-AWI-JLT, 2013 WL 3354446 at *5 (E.D. Cal. July 3, 2013) ("The Court is confounded by the concept's circular logic in that it requires the Court first—in full recognition of the lack of diversity jurisdiction—sever part of the case and *only then* find it has jurisdiction. However, the authority to sever misjoined claims or defendants under Rule 20 *presumes* the Court has jurisdiction to act."). Because of the

doctrine's incompatibility with core principles underlying removal jurisprudence and "[c]onsidering the great weight of authority both criticizing and declining to adopt the fraudulent misjoinder doctrine," courts in this district have repeatedly declined to adopt this doctrine and have instead found that any motion to sever is better left to the sound judgment of the state court. *Sztroin v. Dituri*, No. C22-5608 BHS, 2022 WL 7053149 at *3–4 (W.D. Wash. Oct. 12, 2022).

In so holding, courts in this district have joined an "overwhelming number of district courts" across the Ninth Circuit that have refused to adopt the doctrine. *Peterson*, 2018 WL 6573155 at *9; *see also Arco GC, LLC v. KCL Excavating, Inc.*, No. C23-1720JLR, 2024 WL 124673 at *3 (W.D. Wash. Jan. 11, 2024) ("[M]ost district courts in the Ninth Circuit (including courts within this District) have expressly declined to adopt [the fraudulent misjoinder doctrine].").  This Court should do the same.

Application of the procedural misjoinder doctrine in this case would not lead to a finding of misjoinder—let alone egregious misjoinder—in any event. Under the Eleventh Circuit's articulation of the doctrine, fraudulent misjoinder occurs where the diverse defendant has "no real connection" to any claim against a nondiverse defendant. *Tapscott*, 77 F.3d at 1360. As explained *supra*, Plaintiff has alleged that Olympic has individually and in concert with the other Defendants engaged in unlawful conduct that proximately caused Decedent's injuries and death.

## C.    The Court should award Plaintiff just costs and fees.

The Court may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" in an order remanding this case to state court. 28 U.S.C. § 1447(c). The fee shifting provision is designed to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). An award of fees is appropriate where "the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

1    First, fraudulent joinder is unreasonable where, as here, the complaint contained detailed

2    allegations against the purported "sham" defendant. *Grancare*, 889 F.3d at 552. As outlined

3    extensively above, the Complaint makes allegations against Olympic individually, the BP

4    defendants (including Olympic), and all Defendants collectively. These detailed allegations alone

5    render the assertion of fraudulent joinder unreasonable and should give rise to an award of costs

6    and attorney fees. However, Defendants' bare denial of these allegations and mischaracterization

7    of Olympic's activities—exemplified by the document they themselves introduced and cited—

8    exacerbates the unreasonableness of their fraudulent joinder claim.

9    Second, Defendants themselves note that several of the Defendants named in this case

10   have been named as Defendants in "more than two dozen similar climate change lawsuits that

11   have been brought in recent years by states, tribes, and municipalities around the country." Dkt.

12   #1, at 11, ¶ 21. However, Defendants fail to note that they removed nearly every one of those

13   cases, and that remand was granted in each case in which it was sought, including in two cases in

14   this District. *See Makah Indian Tribe v. Exxon Mobil Corp.,* No. 2:24-cv-157 & *Shoalwater Bay*

15   *Indian Tribe v. Exxon Mobil Corp.*, No. 2:24-cv-158, 2025 WL 913767 at *1 (W.D. Wash. Mar.

16   26, 2025). Defendants have achieved their desired delay time and again, despite the fact that every

17   Circuit Court of Appeals to hear their removal arguments has rejected them, including the Ninth

18   Circuit on three separate occasions. *City & County of Honolulu v. Sunoco* LP, 39 F.4th 1101, 1106

19   (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023) (three years of delay from when the complaint

20   was filed on March 9, 2020); *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 744 (9th Cir.

21   2022), *cert. denied*, 143 S. Ct. 1797 (2023) (six years of delay from when the complaint was filed

22   on July 17, 2017); *City of Oakland v. BP* PLC, 969 F.3d 895, 901 (9th Cir. 2020), *cert. denied*,

23   141 S. Ct. 2776 (2021) (Defendants subsequently filed a renewed motion to remand alleging

24

1   additional grounds for federal jurisdiction, all of which were denied, *City of Oakland v. BP PLC*,

2   No. C 17-06011, 2022 WL 14151421 at *2 (N.D. Cal. Oct. 24, 2022), *aff'd* No. 2022-16810, 2023

3   WL 8179286 (9th Cir. Nov. 27, 2023), totaling six years of delay from when the complaint was

4   filed on Sept. 19, 2017).[3]

5       While Defendants successfully evaded an award of adverse fees in Multnomah's case on

6   the basis that they had not yet raised these particular fraudulent joinder and procedural misjoinder

7   arguments in suits in the Ninth Circuit, that is no longer true. *See Multnomah Magistrate Judge's*

8   *Recommendation*, 2024 WL 1991554 at *8. The court in *Multnomah* strongly rejected

9   Defendants' attempts to assert these fraudulent joinder and procedural misjoinder arguments. *See*

10  2024 WL 2938473 at *4–7. Defendants' arguments fare no better here because there is no

11  precedent in this District to support them, as betrayed by the complete absence of citations in the

12  Notice of Removal. Their failed recycled arguments here are nothing more than a delay tactic.

13      Defendants have removed this case without a reasonable basis for the purpose of

14  prolonging litigation. An award of reasonable costs and fees is appropriate to hold Defendants

15  accountable for baselessly stalling this litigation as they have in an abundance of other cases.

16

17

18

---

19  [3] Every circuit court of appeals to address Defendants' removal arguments, including appellate
    courts in the First, Second, Third, Fourth, Eighth, Ninth, Tenth, and D.C. circuits, has similarly

20  rejected fossil fuel defendants' repeated attempts at removal. *See Rhode Island v. Shell Oil
    Production Co.*, 35 F.4th 44, 55 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 1796 (2023); *Connecticut*

21  *v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th
    699, 708 (3d. Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *Mayor & City Council of Baltimore*

22  *v. BP p.l.c.*, 31 F.4th 178, 195 (4th Cir. 2022), *cert. denied*, 143 S.Ct. 1795 (2023); *Minnesota v.
    Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 620 (2024); *Bd. of Cnty.*

23  *Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022), *cert.
    denied*, 143 S. Ct. 1795 (2023); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C.

24  Cir. 2023).

V.    **CONCLUSION**

For the foregoing reasons, this Court should expeditiously grant Plaintiff's motion to remand this case to the Superior Court of Washington for King County, where the case was filed and where it belongs, and award just costs to Plaintiff.

The undersigned counsel certifies that this memorandum contains 5,637 words, in compliance with the Local Civil Rules and the parties' stipulation entered by the Court on July 3, 2025. *See* Dkt. # 26.

Respectfully submitted,

 */s/ Timothy Bechtold*
TIMOTHY BECHTOLD, WSBA # 63495
Bechtold Law Firm, PLLC
PO Box 7051, Missoula, MT 59807
Tel:    (406) 721-1435
Email: tim@bechtoldlaw.net

ALIZABETH BRONSDON, WSBA # 63393
Bronsdon Law Firm, PLLC
PO Box 7262, Missoula, MT 59807
Tel:    (267) 664-3422
Email: bronsdonlaw@gmail.com

*Attorneys for Plaintiff*