UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MISTI LEON, as personal representative of the ESTATE OF JULIANA LEON,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION, et al.,<br><br>Defendants. | CASE NO. C25-1190 MJP<br><br>ORDER GRANTING MOTION TO REMAND |

This matter comes before the Court on Plaintiff's Motion to Remand. (Dkt. No. 56.) Having reviewed the Motion, Defendant Olympic Pipe Line Company LLC's Opposition (Dkt. No. 60), Defendants' Joint Opposition (Dkt. No. 62), the Reply (Dkt. No. 63), and all supporting materials, the Court GRANTS the Motion and REMANDS this matter to King County Superior Court.

# BACKGROUND

Plaintiff Misti Leon, as personal representative for the estate of Juliana Leon, commenced this wrongful death action seeking to hold various oil and gas companies responsible for Juliana's death that occurred during the heat dome event of 2021. Plaintiff pursues product liability and public nuisance claims. Defendants removed the case from King County Superior Court, contending that the Court has diversity jurisdiction because the one non-diverse defendant—Olympic Pipe Line Company LLC—is fraudulently joined. The Court reviews the relevant factual allegations and the procedural posture.

**A.     Relevant Factual Background**

On June 28, 2021, Juliana Leon died of hyperthermia while driving her car without air conditioning in temperatures well over 100 degrees during a heat dome event where morning temperatures were already over 90 degrees. (Compl. ¶¶ 4.8-4.15 (Dkt. No. 1-1).) Leon was driving to Seattle from Ferndale in order to visit her doctor for a post-operative visit. (Id. ¶¶ 4.6-4.9.) Leon's doctor's appointment ended at around noon, and she was released with vitals showing unremarkable symptoms. (Id. ¶¶ 4.9-4.10.) As she drove home, the temperature outside was over 100 degrees, and she was forced to roll her windows down because the air conditioning was not working in her car. (Id. ¶ 4.10.) At some point during her drive, she pulled off the highway and parked her car in a residential area, where a passer-by found her unresponsive with the windows rolled down. (Id. ¶¶ 4.11-13.) Emergency personnel were unable to revive her, and her internal temperature exceeded 107 degrees while the ambient air temperature was 105 degrees. (Id. ¶ 4.14.)

**B.     Procedural History**

1    Plaintiff filed suit against Defendants, who are "multinational oil and gas companies that
2    produce, refine, distribute, promote, market, and sell fossil fuels and fossil fuel-based products
3    worldwide, including in Washington." (Compl. ¶ 2.2.) Defendants include: (1) Exxon Mobil
4    Corporation and ExxonMobil Oil Corporation; (2) BP p.l.c. and BP America Inc.; (3) Olympic
5    Pipeline Company LLC; (4) Chevron Corporation and Chevron U.S.A., Inc.; (5) Shell plc and
6    Shell USA, Inc.; (6) ConocoPhillips, ConocoPhillips Company, Phillips 66, and Phillips 66
7    Company. (Id. ¶¶ 2.3-2.7.) Through a wrongful death/survivorship action, Plaintiff pursues
8    claims under the Washington Product Liability Act and Washington's Public Nuisance statute.
9    (Id. ¶¶ 5.1-5.28.)

10   Defendants removed the action from King County Superior Court on the theory that the
11   Court has diversity jurisdiction. (Notice of Removal (Dkt. No. 1).) They did so even though
12   Plaintiff and one of the Defendants, Olympic Pipeline Company LLC, are both citizens of
13   Washington. (Id.) To get around this impediment to diversity jurisdiction, Defendants insist that
14   Olympic has been fraudulently joined and is procedurally misjoined. (Id. ¶¶ 3-5.)

15   Plaintiff has filed a Motion to Remand, which turns on the allegations against Olympic.
16   Olympic owns a "400-mile mile pipeline between Blaine, Washington, and Portland, Oregon,
17   and the Bayview, Washington, terminal." (Compl. ¶ 2.4(f).) Plaintiff alleges that "BP is
18   responsible for managing Olympic['s] . . . day-to-day operations, and Olympic . . . is subject to
19   BP's management and control." (Id. ¶ 2.4(e).) Olympic is alleged to have been a member of the
20   Western States Petroleum Association (WSPA) from 1999 to 2012. (Id. ¶ 2.4(g).) Olympic has
21   provided a declaration with more detail about its activities. The declarant, Douglas Nilsen,
22   explains that Olympic's "pipeline system transports finished grade petroleum products . . . for
23   Olympic's customers (i.e., the shippers)" and that these "customers own the finished-grade
24

petroleum product transported through the pipeline system." (Declaration of Douglas Nilsen ¶ 3 (Dkt. No. 61).) Nilsen avers that Olympic is not involved in the design or manufacture or sale of petroleum products, though his declaration is limited to his unidentified personal "knowledge." (Id. ¶ 6-7.) Nilsen also admits that Olympic does "[o]n rare occasions" sell a form of gas mixture (called "transmix") to others shipper, though not the public. (Id. ¶ 8.).

As to the product liability claim, Plaintiff alleges that "Defendants are manufacturers and/or sellers other than manufacturers of dangerous fossil fuel products" and that their "products have never been safe because their intended use or foreseeable misuse creates a risk of catastrophic harm to the climate and humankind." (Id. ¶ 5.10.) She further alleges that "[a]lthough Defendants have known of this risk and how to mitigate it for decades, they have never issued product warnings to consumers" and "have affirmatively concealed the risks by deceiving the public about the reality of climate change, the consequences of climate change, and the role their fossil fuel products play in causing and exacerbating climate change." (Id. ¶ 5.11.) In addition, Plaintiff alleges that both at and post-manufacture, Defendants violated a duty to warn consumers about the causal connection between the use of fossil fuels and the risk of climate change. (Id. ¶ 5.14.) And as to "those Defendants acting primarily as wholesalers, distributors, and/or retailers of fossil fuel products at all relevant times knew those products would cause catastrophic harm, yet negligently failed to warn of those harms, and misrepresented and/or intentionally concealed material facts about unabated use of those products." (Id. ¶ 5.16.)

In support of her public nuisance claim, Plaintiff alleges Olympic and the other defendants "individually and in concert with each other, have engaged, and continue to engage in, unlawful, negligent, reckless, knowing, and/or intentional tortious conduct." (Compl. ¶ 5.23.)

1  This conduct includes, among other things, concealing the hazards of fossil fuel use, "promoting
2  and creating the sale and use of fossil fuels without warning consumers that using fossil fuels
3  would cause dangerous climate change," and "promoting and creating the sale and use of fossil
4  fuels that Defendants knew to be hazardous and knew would cause or exacerbate climate change
5  and related consequences, including, but not limited to, extreme heat events and the conditions
6  that led to the Heat Dome, such as drought, soil aridity, and warm ocean temperature." (Id. ¶
7  5.23(b), (c), (d).) Plaintiff asserts that this conduct has harmed public health and property, as well
8  as Juliana Leon's health, comfort, safety, security, and, ultimately, life. (Id. ¶ 5.24.)

## ANALYSIS

**A.    Subject Matter Jurisdiction and Fraudulent Joinder Standards**

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). And in determining whether there is complete diversity, "district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir. 2018) (citing Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914)). Stated differently, "[i]f a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state, the joinder is fraudulent and 'the defendant's presence in the lawsuit is ignored for purposes of determining diversity.'" United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 761 (9th Cir. 2002) (quoting Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001).

1     "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of
2     jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-
3     diverse party in state court.'" Grancare, 889 F.3d at 548 (quoting Hunter v. Philip Morris USA,
4     582 F.3d 1039, 1044 (9th Cir. 2009)). "Fraudulent joinder is established the second way if a
5     defendant shows that an 'individual[ ] joined in the action cannot be liable on any theory.'" Id.
6     (quoting Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)). But "if there is a
7     possibility that a state court would find that the complaint states a cause of action against any of
8     the resident defendants, the federal court must find that the joinder was proper and remand the
9     case to the state court." Hunter, 582 F.3d at 1046 (quoting Tillman v. R.J. Reynolds Tobacco,
10    340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam)) (emphasis added). "A defendant invoking
11    federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since
12    there is a 'general presumption against [finding] fraudulent joinder.'" Id. (quoting Hunter, 582
13    F.3d at 1046 (citations omitted)).

14    **B.    Citizenship of Olympic**

15          The Court sua sponte raised the question of whether Olympic adequately demonstrated
16    that it is a citizen of Washington for purposes of diversity jurisdiction. (Order to Show Cause
17    (Dkt. No. 64).) As the Court previously explained, in the context of diversity jurisdiction "an
18    LLC is a citizen of every state of which its owners/members are citizens." Johnson v. Columbia
19    Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). Missing from the record before the
20    Court was adequate information to assess the citizenship of Olympic Pipe Line Company, LLC,
21    as the two owners were themselves LLCs: (1) BP Midwest Product Pipelines Holdings LLC
22    ("BP Midwest") and (2) SeaPort Pipeline Holdings, LLC  ("SeaPort"). (Dkt. No. 50.) Olympic
23    has since responded, indicating that BP Midwest itself has two owners, including Lerado
24

Investments, LLC. (Declaration of Sandra Rutova ¶ 2 (Dkt. No. 70).) One of the owners of Lerado Investments, LLC is the Washington State Investment Board, a state entity, who is a partner in an investment fund that owns some interest in Lerado. (Id. ¶¶ 2-4.) Additionally, SeaPort is owned, in part, by an investment fund partnership whose partners include members and owners who reside in Washington. (Declaration of Christine Miller ¶¶ 3, 5 (Dkt. No. 69).) With these additional disclosures, the Court is satisfied that for purposes of diversity, Olympic is a citizen of Washington.

**C.     No Fraudulent Joinder**

Defendants fall short of demonstrating that Olympic cannot be liable for violating Washington's product liability and public nuisance statutes and that it has been fraudulently joined. The Court reviews the merits of both claims and explains why the Olympic and Defendants have failed to demonstrate fraudulent joinder.

**1.     Product Liability**

Under the Product Liability Act, "a product seller other than a manufacturer is liable to the claimant only if the claimant's harm was proximately caused by: (a) The negligence of such product seller; or . . . (c) The intentional misrepresentation of facts about the product by such product seller or the intentional concealment of information about the product by such product seller." RCW 7.72.040(1). The Act defines "product seller" as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption" and it "includes a manufacturer, wholesaler, distributor, or retailer of the relevant product." RCW 7.72.010(1).

Plaintiff here has plausibly alleged that Olympic is a "product seller other than a manufacturer" who can be liable under the Product Liability Act. As alleged, Olympic owns and

operates a distribution network of petroleum products within Washington and Oregon. (Compl. ¶ 2.4(f).) This satisfies the "product seller" element because Olympic is engaged in the business of selling petroleum products through its distribution services. RCW 7.72.010(1). Although the allegations specific to Olympic are not robust and highly detailed, they suffice to show that it could be liable on this claim.

Olympic argues that it cannot fit the statutory definition because it is not "engaged in the business of selling" any product, and is instead a "common carrier that merely transports finished petroleum products on behalf of its customers." (Olympic Opp. at 7.) There are two problems to this argument.

First, there is no carve out for "common carriers" in the Product Liability Act. By its plain terms, it applies to distributors and Plaintiff has alleged that Olympic distributes petroleum products. Indeed, Nilsen's declaration confirms that Olympic distributes gas products throughout Washington. And while Olympic cites to various rules regarding common carriers, those appear to have no bearing on the Product Liability Act, and no authority has been provided to sustain this argument.

Second, the three cases on which Olympic relies do not support the distinction it endeavors to make between a "distributor" who can be liable and an entity that might be considered a "mere conduit." (Olympic Opp. at 7 (citing Bostwick v. Ballard Marine, Inc., 127 Wn. App. 762 (2005); Hiner v. Bridgestone/Firestone, Inc., 91 Wn. App. 722, 736 (1998); Buttelo v. S.A. Woods-Yates Am. Mach. Co., 72 Wn. App. 397, 404 (1993). Both Bostwick and Butello concerned allegations against product lessors, which requires the courts to determine whether the particular defendants were "product sellers" who were sufficiently engaged in the business of leasing the product at issue to impose liability. Both Bostwick and Buttelo are

specific only to lessors, not distributors, and Olympic has not cited any authority for the proposition that considerations about lessors are coextensive with those about distributors. That renders the cases largely inapposite. Even if the cases were relevant, the test they announce does not show Olympic cannot be liable as a product seller. See Grancare, 889 F.3d at 548 (holding that fraudulent joinder requires finding the defendant "cannot be liable" for the alleged claim). In Butello, the Court explained that "products liability principles should be applied only when the policies underlying the duty to guard against injuries caused by products will be advanced; i.e., only when the volume of transactions is sufficient to give the seller or lessor the ability to guard against and to pay for any injury." 72 Wn. App. at 404. Here, Olympic is alleged to have engaged in substantial distribution and there is no dispute as to the extent of its large footprint from Nilsen's declaration. True, Butello also explains that the Product Liability "statute clearly differentiates between those who have actual control over the product and those who act as mere conduits in the chain of distribution." Buttelo, 72 Wn. App. at 404. But that statement is premised on RCW 7.72.010(1)(d), which examines an exclusion for lessors (not distributors), and expressly distinguishes lessors from distributors. Id. Applying it to distributors would potentially allow distributors to escape liability by claiming to be mere conduits notwithstanding the plain language of the Act applying to them. Lastly, Hiner is of no aid to Olympic, as it merely determined that an individual who installed tires on a car was "not in the business of selling them," and therefore could not be liable as a manufacturer might. Hiner, 91 Wn. App. at 736. This has no bearing on the claims presented.

Defendants also contend that the Complaint fails to allege that Olympic made any misrepresentations and that this defeats the Product Liability claim. (Defs. Joint Opp. at 6-15.) Specifically, Defendants contend that Plaintiff has not alleged Olympic engaged in any

marketing or communications about climate change or any subject relevant to the claims and therefore cannot be liable. (Id. at 9.) But this ignores the allegations that Olympic intentionally concealed and omitted disclosure of information, which is sufficient for purposes of stating a claim under the Product Liability Act. Indeed, the Complaint alleges that Olympic and all Defendants "negligently failed to warn" the public about the risks of the petroleum products they manufactured and distributed through both misrepresentations and intentional omissions. (Compl. ¶¶ 5.12-6.16.) There is no obvious defect in the omission-based allegations against Olympic that might satisfy the fraudulent joinder standard. See Grancare, 889 F.3d at 548. And while Plaintiff could have provided more specific allegations as to Olympic versus the other Defendants, the Court sees no reason why the claim itself fails. Defendants have not identified any obvious defect in the pleadings that would satisfy their burden to show the claim cannot proceed and that Olympia has been fraudulently joined.

The Court finds that Olympic and Defendants have not met their "heavy burden" to show that it cannot be liable under the Product Liability Act. There is no clear indication from Washington case law that Olympic cannot be liable as a distributor and therefore a "product seller" under the Act or that the allegations do not suffice to state a claim. See Hunter, 582 F.3d at 1046.

**2.     Public Nuisance**

Defendants have failed to meet their burden to show Olympic cannot be liable under Washington's public nuisance statute. This is an additional reason why the case must be remanded.

Under Washington's Public Nuisance law, "[n]uisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the

1  comfort, repose, health or safety of others . . . or in any way renders other persons insecure in
2  life, or in the use of property." RCW 7.48.120. "[W]hatever is injurious to health or indecent or
3  offensive to the senses . . . so as to essentially interfere with the comfortable enjoyment of the
4  life and property" is an actionable nuisance. RCW 7.48.010.

5  Here, Plaintiff alleges that Olympic violated its duty not to endanger Leon's comfort, life,
6  and safety by "engag[ing], and continu[ing] to engage in, unlawful, negligent, reckless, knowing,
7  and/or intentional tortious conduct." (Compl. ¶ 5.23.) This conduct includes, among other things,
8  concealing the hazards of fossil fuel use, "promoting and creating the sale and use of fossil fuels
9  without warning consumers that using fossil fuels would cause dangerous climate change," and
10 "promoting and creating the sale and use of fossil fuels that Defendants knew to be hazardous
11 and knew would cause or exacerbate climate change and related consequences, including, but not
12 limited to, extreme heat events and the conditions that led to the Heat Dome, such as drought,
13 soil aridity, and warm ocean temperature." (Id. ¶ 5.23(b), (c), (d).) Plaintiff asserts that this
14 conduct has harmed public health and property, as well as Leon's health, comfort, safety,
15 security, and, ultimately, life. (Id. ¶ 5.24.) A plain reading of the statute therefore suggests that
16 this is a potentially viable nuisance claim, even if a jury might not ultimately be convinced the
17 company should have warned the public about the risks.

18 The Court finds little merit in Olympic's argument that it had no duty to warn the public
19 about the negative impacts of fossil fuel use on human health because it only transports
20 petroleum products and "does not otherwise interact with the public about the products it
21 transports." (Olympic Opp. at 10.) But a duty under the public nuisance law does not turn on
22 whether the defendant interacts with the public. A duty to warn about an unsafe product appears
23 actionable against distributors, and no case law has been cited to support Defendants' contrary
24

argument. And Plaintiff here as provided allegations that Olympic knew or should have known that the petroleum products it was transporting were unsafe.

Olympic also argues that it cannot be liable because it has been given express authority by statute to transport petroleum products and the Public Nuisance Act exempts that "which is done or maintained under the express authority of a statute[.]" RCW 7.48.160; (Olympic Opp. at 11.) But as Plaintiff points out, RCW 81.04.440 explicitly allows for legal actions where a party alleges loss, damage, or injury caused by the act or omission of a common carrier in violation of Washington law. See also Tiegs v. Boise Cascade Corp., 83 Wn. App. 411, 419 (1996), aff'd sub nom. Tiegs v. Watts, 135 Wn.2d 1, (1998) ("'[I]t is of no consequence that a business which causes a nuisance is a lawful business.'" (quoting Branch v. Western Petroleum, Inc., 657 P.2d 267, 274 (Utah 1982))). Thus, the carve-out that Olympic cites has no application, as state law still allows for claims such as those presented here to proceed against common carriers.

\*   \*   \*

The Court GRANTS the Motion to Remand because Defendants have failed to demonstrate that Olympic cannot be liable under the claims alleged. While Plaintiff may not succeed in establishing liability, there is no basis here to find Olympic is fraudulently joined.

**D.     Procedural Misjoinder**

Defendants argue that the claims against Olympic are procedurally misjoined under Rule 20. The argument lacks merit.

The Ninth Circuit has not adopted the fraudulent misjoinder argument Defendants present and "most district courts within the Ninth Circuit have expressly declined to adopt it." Sztroin v. Dituri, No. C22-5608 BHS, 2022 WL 7053149, at \*3 (W.D. Wash. Oct. 12, 2022) (citing Peterson v. Kennewick, No. 18-cv-1302-BJR, 2018 WL 6573155, at \*8 (W.D. Wash. Dec. 13, 2018) (collecting cases)). That is because "questions of joinder under state law do not implicate

federal subject matter jurisdiction, federal jurisdiction is to be narrowly construed, and the fraudulent misjoinder doctrine has created an unpredictable and complex jurisdictional rule." In re Prempro Prods. Liab. Litig., 591 F.3d 613, 621–22 (8th Cir. 2010) (citing Osborn v. Metro. Life Ins. Co., 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004); Rutherford v. Merck & Co., 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006); 14B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3723 (4th ed. 2009)). The "better rule would require [the diverse defendant] to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court." Osborn, 341 F. Supp. 2d at 1127.

Defendants have failed to articulate any reason why the Court should apply this strained theory that has no Ninth Circuit precedent and has been repeatedly rejected in this District. The Court remains unpersuaded that procedural misjoinder should be resolved by this Court at this juncture, where the parties, at removal, are non-diverse. The Court therefore rejects the argument.

**E.   Fees and Costs**

The Court finds Defendants' choice to remove the action does not warrant imposition of fees and costs.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit" and the removal is ultimately unsuccessful. Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008).

Although the Court was unpersuaded by any of Defendants' arguments, it does not find the removal objectively unreasonable. The arguments advanced identified potential weaknesses in Plaintiff's claims, but failed to show that Olympic "cannot be liable." See Grancare, 889 F.3d at 548. Defendants' points were both well-presented, but ultimately unsuccessful. The record here does not support an award of fees and costs. Accordingly, the Court DENIES the request for fees and costs.

## CONCLUSION

Defendants have failed to meet their heavy burden to show that Olympic was fraudulently joined to this action. As such, the Court finds that it lacks subject matter jurisdiction where the parties are not diverse and the removal was premised on diversity jurisdiction. The Court also rejects Defendants' procedural misjoinder argument. The Court therefore GRANTS the Motion and REMANDS this action to King County Superior Court. But the Court DENIES the request for fees and costs.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 28, 2025.

Marsha J. Pechman
United States Senior District Judge